**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION**

| | |
|---|---|
| KATHLEEN PARRY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:19-cv-00184-TWP-DML |
| ) | |
| STANDARD FUSEE CORPORATION ) | |
| d/b/a ORION SAFETY PRODUCTS, ) | |
| ) | |
| Defendant. ) | |

**ENTRY GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on a Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 filed by Defendant Standard Fusee Corporation d/b/a Orion Safety Products ("Standard Fusee") (Filing No. 66). Plaintiff Kathleen Parry ("Parry") initiated this action against Standard Fusee alleging product liability following the discharge of a flare launcher, manufactured by Standard Fusee, which resulted in Parry sustaining serious physical injury (Filing No. 1). For the following reasons, the Court **grants** Standard Fusee's Motion for Summary Judgment.

## I. BACKGROUND

The following facts are not necessarily objectively true, but as required by Federal Rule of Civil Procedure 56, the facts are presented in the light most favorable to Parry as the non-moving party. *See Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

In December 2016, while living in Florida, Parry was given a marine distress signal launcher kit by her friends, Tina and Brook Sanderson ("the Sandersons"), as a Christmas gift (Filing No. 66-1 at 5-6). Included in the "Orion Alerter Basic – 4" kit was a twelve-gauge launcher

("Orion flare launcher") and four signaling flares (Filing No. 66-2 at 2). The gift was a surprise to Parry but the Sandersons explained that because Parry lived alone, she needed to protect herself and they wanted her to use the Orion flare launcher for protection (Filing No. 66-1 at 7). Parry was told by the Sandersons that she would not need a permit for the Orion flare launcher, and she was shown how to use the device. *Id*. at 8. She read the packaging for the Orion flare launcher and understood that it was for marine use, knew it was for "a boat, a vessel that's out on the water that's in distress" in order to get someone's attention. *Id*. at 10. Parry also read the loading and launching instructions. She read the first warning that stated "for the most effective use, fire only after signaling a potential rescue vessel". *Id*. at 12. She read the second warning that told her when you need to signal somebody, that's when you break open the barrel, insert the flare and then close it; and once you have a potential rescue vehicle, that's when you load it. *Id*. at 13. Parry also knew from the third instruction that you don't load the flare launcher until you see the potential rescue vessel. *Id*.

Brook Sanderson put the flare cartridge in the distress signal launcher and instructed Parry to "just point and shoot if someone comes at you." *Id*. at 8. Parry took the loaded Orion flare launcher home and placed it in the nightstand in her bedroom in case somebody broke into her home. *Id.* at 15. The packaging for the launcher was left in a closet. The loaded Orion flare launcher remained in Parry's nightstand for a year until she moved to Indiana in late October 2017. Parry packed the loaded Orion flare launcher in a box with her belongings and the box was loaded onto a U-Haul moving truck that was driven to her new residence. *Id*. at 17. The open box containing the loaded Orion flare launcher was placed in Parry's bathroom. Parry did not see the Orion flare launcher in her bathroom until November 5, 2017. *Id.* at 17–18.

On November 5, 2017, Parry was cleaning and painting the inside of the cabinets in her bathroom. After emptying the cabinets and painting inside, Parry waited for the wet paint to dry and then began to place items back inside the cabinets. While standing beside her toilet, in front of the cabinets, Parry heard a loud bang from behind her left leg. She felt a sharp burn, stinging, and a stabbing pain in her leg. Parry assumes that she bumped the cabinet where the launcher was sitting. *Id*. at 23. However, she does not remember bumping into anything in the bathroom or otherwise seeing where the Orion flare launcher may have dropped. *Id*. at 24. Parry does not know exactly where the loaded Orion flare launcher was at the time of the discharge. *Id*. at 20–23.

The discharged flare caused flames to shoot out at least two feet. *Id.* at 23. The flare hit Parry in the back of her left thigh. Using a bathroom mat, she smothered the fire and put out the flames. A 911 call was made to the Bedford (Indiana) Police Department for shots fired and police arrived at Parry's residence shortly after. ([Filing No. 66-6 at 4](#).) Upon arrival, police observed the house filled with smoke and Parry, sitting on the covered back porch, was bleeding from her leg. *Id*. 4–5. The Orion flare launcher was found on the floor of the bathroom, at the base of the toilet, with the barrel facing out. *Id.* at 5. A responding officer at the scene stated that it appeared that the launcher trigger was sitting on a raised bolt on the bottom-side of the toilet. *Id*. at 8.

On August 29, 2019, Parry filed a Complaint alleging products liability ([Filing No. 1 at 3](#)). Standard Fusee moved for summary judgment on June 4, 2021 ([Filing No. 66](#)).

## II.     LEGAL STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Federal Rule of Civil Procedure 56 provides that summary

judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007).  In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Zerante,* 555 F.3d at 584 (7th Cir. 2009) (citation omitted).   "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion."  *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted).  Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial*."*  *Hemsworth*, 476 F.3d at 490 (citation omitted).  "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox County Hosp*., 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of [the] claim." *Ritchie v. Glidden Co*., 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotation marks omitted). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc*., 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

### III.  DISCUSSION

In her Complaint, Parry raises a only one claim of products liability, alleging the Orion Alerter Basic – 4 was "defective in its design and/or manufacture," because the Orion flare launcher "was prone to 'drop fire.'" (Filing No. 1 at 3.) These defects were the cause of her injuries and the flare launcher that was a part of the Orion Alerter Basic – 4 kit was "not fit and/or safe for ordinary use because of the inherent risk in its design/manufacture." *Id*. Parry asserts that Standard Fusee knew or should have known of the "design and/or manufacturing defects" of the Orion flare launcher that could result in a drop fire. Parry asserts that as a direct and proximate result of the alleged design or manufacturing defects of the Orion flare launcher, she suffered "severe physical pain and mental anguish, permanent debilitating injuries," and "substantial medical bills." *Id*. at 4. Further, Parry suffered permanent impairment of the use and function of the leg that was struck by a flare. *Id*.

Standard Fusee asks the Court to enter summary judgment in its favor. (Filing No. 66.) It asserts that Parry's misuse of the Orion flare launcher bars recovery as a matter of law. (Filing No. 67 at 11.) Standard Fusee maintains that its experts will bolster its contention that the misuse of the Orion flare launcher is dispositive and Parry cannot meet her burden of proof to establish her claim. *Id*. at 15-16.

**A.    Indiana Products Liability Act**

As the Court is exercising diversity jurisdiction, Parry's claim against Standard Fusee is governed by the Indiana Products Liability Act ("IPLA"). *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 (1938). "[T]he Indiana Products Liability Act ("IPLA"), Indiana Code sections 34-20-1-1 through 34-20-9-1, governs all actions brought by a user or consumer against a manufacturer or seller for physical harm caused by a product, regardless of the legal theory upon which the action

is brought." *Hathaway v. Cintas Corporate Servs., Inc.*, No. 1:10-cv-195, 2012 WL 4857828, *3 (N.D. Ind. Oct. 11, 2012) (citing Ind. Code § 34- 20-1-1). The IPLA imposes liability for physical harm caused by a product in an unreasonably dangerous and defective condition. *TRW Vehicle Safety Sys., Inc. v. Moore*, 936 N.E.2d 201, 209 (Ind. 2010). "A product may be defective within the meaning of the Act because of a manufacturing flaw, a defective design, or a failure to warn of dangers in the product's use." *Natural Gas Odorizing, Inc. v. Downs*, 685 N.E.2d 155, 161 (Ind. Ct. App. 1997) (citing *Hoffman v. E.W. Bliss Co.*, 448 N.E.2d 277, 281 (Ind. 1983)).

> The IPLA outlines the requirements for a product liability claim:
>
> Except as provided in section 3 of this chapter, a person who sells, leases, or otherwise puts into the stream of commerce any product in a defective condition unreasonably dangerous to any user or consumer ... is subject to liability for physical harm caused by that product to the user or consumer ... if:
>
> > (1) that user or consumer is in the class of persons that the seller should reasonably foresee as being subject to the harm caused by the defective condition; (2) the seller is engaged in the business of selling the product; and (3) the product is expected to and does reach the user or consumer without substantial alteration in the condition in which the product is sold by the person sought to be held liable under this article.

*Simpson v. Gen. Dynamics Ordnance & Tactical Sys.-Simunition Operations*, Inc., 429 F. Supp. 3d 566, 575 (N.D. Ind. 2019) (quoting Ind. Code § 34-20-2-1); *see Brewer v. PACCAR, Inc.*, 124 N.E.3d 616, 621 (Ind. 2019). "'The requirement that the product be in a defective condition focuses on the product itself while the requirement that the product be unreasonably dangerous focuses on the reasonable expectations of the consumer.'" *Heritage Operating, L.P. v. Mauck*, 37 N.E.3d 514, 523 (Ind. Ct. App. 2015) (quoting *Welch v. Scripto–Tokai Corp.*, 651 N.E.2d 810, 814 (Ind. Ct. App. 1995)). "A plaintiff bringing an action under the [IPLA] must establish that (1) he or she was harmed by a product; (2) the product was sold 'in a defective condition unreasonably dangerous to any user or consumer'; (3) the plaintiff was a foreseeable user or consumer; (4) the

defendant was in the business of selling the product; and (5) the product reached the consumer or user in the condition it was sold." *Bourne v. Marty Gilman, Inc.*, 452 F.3d 632, 635 (7th Cir. 2006) (citing Ind. Code § 34-20-2-1).

Standard Fusee points out that Parry's Complaint only alleges a claim for a design or manufacturing defect and does not raise a claim for failure to warn. (Filing No. 67 at 11.) Parry concedes that the Orion flare launcher did not have a manufacturing defect. (Filing No. 72 at 8.) Because Parry has not raised a failure to warn claim in her Complaint, the Court **grants** Standard Fusee's summary judgment on Parry's manufacturing defect claim. *See Mach v. Will Cnty. Sheriff*, 580 F.3d 495, 501 (7th Cir. 2009) ("A plaintiff may determine as a matter of strategy that a weak, yet non-frivolous, argument is no longer worth presenting so that he may focus the court's attention on his more meritorious claims."). Therefore, Parry's claim is based solely on a design defect of the Orion flare launcher, which she argues made the device unreasonably dangerous to her as a consumer or user.

**B.     Misuse of the Product**

The IPLA establishes three non-exclusive defenses in an action for products liability: incurred risk, misuse of the product, and modification or alteration of the product. Ind. Code §§ 34-20-6-3 through 34-20-6-5. Comparative fault principles also apply in actions for products liability. Ind. Code § 34-20-8-1.

Standard Fusee raises a defense of misuse under the IPLA against Parry's products liability claim. Ind. Code § 34-20-6-4. The statue states "[i]t is a defense to an action under this article … that a cause of the physical harm is a misuse of the product by the claimant or any other person not reasonably expected by the seller at the time the seller sold or otherwise conveyed the product to another party." Ind. Code § 34-20-6-4. Misuse "means to use a product in a way in which it

7

was not intended to be used." *Traylor v. Husqvarna Motor,* 988 F.2d 729, 734–35 (7th Cir. 1993). In Indiana, misuse of a product is "a complete defense, but it has to be proven." *Campbell Hausfeld/Scott Fetzer Co. v. Johnson*, 109 N.E.3d 953, 956 (Ind. 2018). The plain language of the misuse statute delineates two elements which must both be satisfied for a seller to successfully employ the defense: (1) the misuse of the product is the cause of the harm; and (2) such misuse is not reasonably expected by the seller. *See* Ind. Code § 34-20-6-4.

Standard Fusee contends that the "undisputed facts clearly establish that [Parry's] misuse of the flare launcher was the cause of her injury, and that such misuse was not reasonably expected by Orion." ([Filing No. 67 at 12](.).) Standard Fusee argues that Parry's decision to leave the Orion flare launcher in her nightstand for self-defense was demonstrative of her "acting in contravention of its intended purpose (i.e., misusing it)," despite her concession that "she was aware that the Orion flare launcher was for marine use to send a distress signal to get the attention from a rescue vessel." *Id*. Despite distinct instructions to do otherwise, Parry kept the Orion flare launcher loaded in a non-emergency situation, in her home, in a manner unrelated to signaling marine vessels. Standard Fusee contends these actions constitute intervening causes which sever the "chain of causation, and relieves the manufacturer of any liability regardless of whether the product was in fact defective as alleged." *Id.*

Not only did Parry misuse her Orion flare launcher by keeping it in her home for self-defense, Standard Fusee contends that she also misused the device by storing the loaded launcher in a box, transporting it to Indiana, and losing "complete control over a potentially dangerous and extremely flammable" item. *Id*. at 13. Parry's failure to follow the instructions of the Orion flare launcher is an intervening cause of her injuries because she acknowledged knowing that the launcher was for marine use only, admitted that if it was not loaded the incident would not have

8

happened, and failed to store the device "onboard" (in the maritime sense) in a dry accessible place. *Id*. at 14. Standard Fusee contends that Parry was using the Orion flare launcher in a manner that was not contemplated by the manufacturer because she was "using" the device for self-defense and she "'used' the product" while loaded in a house and "lost complete control over its whereabouts and condition." *Id*. Standard Fusee asserts that it could not reasonably expect a consumer to disregard every instruction for proper use nor reasonably expect a consumer to use their device in the manner Parry did. *Id*. Standard Fusee asserts that its two liability experts—a marine safety expert and a firearms handling expert—will "further confirm that [Parry's] misuse of the flare launcher caused her injuries." *Id*. at 16.

Parry responds that although misuse is "typically a question of fact for a jury to decide" under the IPLA, in this instance, "use" and "misuse" do not apply at all because Parry "did not *use* the product under any standard definition of the word. ([Filing No. 72 at 4](#).) (Emphasis in original.) Parry argues that Standard Fusee and its experts seek to "redefine 'use' as 'possession for a particular purpose,'" despite this being a "stretch" of the definition "far beyond its meaning in the English language." *Id*. at 5. She contends that while it is undisputed that she was gifted the Orion flare launcher for self-defense and retained it for that same reason, it is also undisputed that she never actually fired the Orion flare launcher for any purpose, including self-defense. *Id*. She asserts that it is similarly undisputed that she "was not handling, using, or otherwise manipulating the flare gun at the time it discharged." *Id*. Parry maintains that the definition of "use" as employed by Standard Fusee is found nowhere in either Black's Law Dictionary or Merriam-Webster's Dictionary and as a verb, the word "requires action or some affirmative step wherein a person acts to use a product." *Id*. at 6.

Parry asserts that Standard Fusee's reliance on the instructions found on the Orion flare launcher is moot because she was not using the device when it discharged. *Id*. She argues there is ambiguity regarding aspects of the instructions, such as a "qualifying phrase" about whether the device "should be fired without seeing a potential rescue vessel." *Id.* at 7. She contends the Orion flare launcher packaging and instructions are silent on "whether the flare gun can or should be kept loaded." *Id*. Parry points out that the specific warnings on Standard Fusee's website related to storing the Orion flare launcher unloaded are not found on the product packaging, and there is no reference on the packaging informing consumers that further warnings and safety information could be found elsewhere. *Id*. She asserts that the primary reference text used by Standard Fusee's marine safety expert is silent on leaving the launcher loaded or unloaded. *Id*.

Standard Fusee replies that whether or not Parry was actually handling the Orion flare launcher "is immaterial for purposes of assessing whether she was misusing the product." ([Filing No. 80 at 6](#).) Once Parry "maintained the flare launcher in a loaded condition, she was using it." *Id*. Standard Fusee contends that Parry's loading of the Orion flare launcher is part of the "preparation for use" contemplated by the IPLA. *See* Ind. Code § 34-20-4-3 ("A product is not defective under this article if it is safe for reasonably expectable handling and consumption. If an injury results from handling, preparation for use, or consumption that is not reasonably expectable, the seller is not liable under this article."). Keeping the loaded Orion flare launcher in her bedroom was the initial misuse and packing the loaded device and transporting it to a new state is the second example of misuse, according to Standard Fusee. They assert both instances are each a proximate cause of Parry's incident and injury because her claim that the Orion flare launcher discharged because it was loaded and fell from a storage box is directly related to her misuse of the product. *Id*. at 7.

Indiana courts have held that misuse is typically a question of fact for a jury to decide. *See Campbell Hausfeld*, 109 N.E.3d at 959. "However, summary judgment based on misuse is appropriate when the undisputed evidence proves that the plaintiff misused the product in an unforeseeable manner." *Hackney v. Pendu Mfg., Inc.*, 146 N.E.3d 1016, 1024 (Ind. Ct. App.), *transfer denied sub nom. Hackney v. Pendu Mfg.*, 153 N.E.3d 1111 (Ind. 2020) (quoting 109 N.E.3d at 959). Standard Fusee's comparison of the instant facts to the facts and analysis found in *Campbell Hausfeld* is instructive. In *Campbell Hausfeld*, a plaintiff operating a mini air die grinder power tool incurred serious injury. *Id.* at 955. The court determined that the plaintiff's injuries could have been avoided if he had followed the instructions on the packaging of the grinder, and it was not reasonably foreseeable that the plaintiff would misuse the grinder in contravention of its instructions in three distinct ways. *Id.* at 960. Parry does not directly contest Standard Fusee's comparison, but she cites *Campbell Hausfeld* as an example to support her contention that "use" requires a plaintiff to have *physically manipulated* the subject product as opposed to the facts at bar wherein she argues she never actually handled, used, or manipulated the Orion flare launcher at the time of its discharge.

Viewing the facts in a light most favorable to Parry at the summary judgment stage, the Court accepts that Parry was not in physical possession of the Orion flare launcher during the events of November 5, 2017, despite her general ownership of the device. *See Zerante,* 555 F.3d at 584 (7th Cir. 2009). However, Parry's intention and decision to use the Orion flare launcher for self-defense in contravention of its intended purpose and instructions, and the manner in which she maintained the product evinces misuse. Parry's own admissions underscore her understanding of the proper use and application of the Orion flare launcher and her decision to disregard the stated instructions for its appropriate maritime purposes:

11

> Parry admits that she was aware that the Orion flare launcher was intended for marine use and understood its marine vessel signaling function (Filing No. 66-1 at 10);
>
> She admits to reading the instructions on the Orion flare launcher packaging and understanding that it was for marine vessels. *Id.*;
>
> Parry admits that she never owned a boat or similar watercraft which would necessitate a marine signaling device. *Id.* at 4;
>
> Parry admits that she retained the Orion flare launcher for self-defense. *Id*. at 14;
>
> She admits to reading and understanding the loading instructions for the Orion flare launcher and admits to knowing that the device was not to be loaded until a rescue vessel was spotted. *Id*. at 13;
>
> She admits to making the decision to keep the Orion flare launcher loaded while in her home for "self-protection." *Id*. at 14;
>
> She admits to packing the loaded Orion flare launcher and bringing it to her new residence for the same home-protection purposes. *Id.* at 17.

Like the court determined in *Campbell Hausfeld*, Parry's failure to follow the instructions on the Orion flare launcher—namely to use it for marine signaling purposes while on a maritime vessel—is the cause of her injuries. *See Campbell Hausfeld*, 109 N.E.3d at 959 (finding plaintiff's "failure to follow the instructions is the cause of his injuries."). If Parry had followed the instructions on the packaging and opted to use the Orion flare launcher for marine signaling only, it would not have been repurposed into a pseudo-weapon and prepared for use as a self-protection tool in her home. Her decision to misuse the product in such a manner led the Orion flare launcher to be imprudently stored in a box that Parry ultimately lost track of until her accident in the bathroom (*see* Filing No. 66-1 at 5-6).

The Court disagrees with Parry's contention that reliance on the Orion flare launcher's instructions is "moot" because Parry was not in physical possession of the launcher at the time of the discharge. Parry clearly admits to understanding the instructions on the packaging of the

12

product and admits that she knew it was for marine use. Her decision to disregard the instructions and keep the Orion flare launcher as an at-home security system instead of its proper purpose directly informs her misuse of the product. *See Anderson v. Procter & Gamble*, No. 1:19-cv-04531-JRS-DLP, 2021 WL 2223791, at *4 (S.D. Ind. June 2, 2021) ("Misuse 'means to use a product in a way in which it was not intended to be used.'") (quoting *Traylor*, 988 F.2d at 735).

Parry's assertion that the Orion flare launcher instructions are "ambiguous in several respects," is also without merit. (Filing No. 72 at 6.) The "qualifying phrase" in the first instruction, which Parry argues makes the instruction unclear, appears to be "**For most effective use**, fire only after sighting a potential rescue vessel." *Id.* at 7 (emphasis added). When read in sequence and in context of the other instructions, there is little ambiguity as to this directive that would support Parry's claim (*see* Filing No. 66-2 at 3–4). Further, the product packaging distinctly denotes: "For marine signaling only." *Id*. Given her admissions, Parry makes much ado about nothing regarding whether the instructions explicitly say to keep the Orion flare launcher loaded or unloaded and the alleged lack of a reference to additional warnings or safety information elsewhere. These contentions are beside the point given that Parry admitted to understanding the instructions were *for marine use* and kept the loaded Orion flare launcher *for self-defense* and not to signal marine vessels as was its intended purpose. Parry's concerns regarding the supposed ambiguous instructions may have been better suited to support a failure-to-warn claim, which she did not raise. *See Mahaffey v. Ramos*, 588 F.3d 1142, 1146 (7th Cir. 2009) (declining to consider claims not adequately briefed).

Having established that Parry's misuse of the Orion flare launcher caused the harm she incurred, the Court moves to the second prong of the misuse defense analysis which centers on whether Parry's misuse of the product was not reasonably expected by Standard Fusee.

13

"Reasonably expectable use like reasonable care involves questions concerning the ordinary prudent person, or in the case of products liability the ordinary prudent consumer." *Short by Southerland v. Estwing Mfg. Corp.*, 634 N.E.2d 798, 801 (Ind. Ct. App. 1994). As noted by the Seventh Circuit:

> The test of reasonably expectable use centers on the manner of use which an ordinary prudent consumer would employ under same or similar circumstances. In applying the test, it is not what the fact finder would have done as an individual, or in the case of a jury, even collectively. Rather, it is a matter of what the fact finder determines the abstract, reasonable prudent consumer, would have done under the circumstances.

*Leon v. Caterpillar Indus., Inc.*, 69 F.3d 1326, 1343 (7th Cir. 1995), *amended* (Nov. 13, 1995), *amended* (Nov. 22, 1995).

Parry provides no case law to support her contention that "use" requires physical manipulation or a specific handling of the product to overcome a misuse defense. In contrast, the IPLA notes, "[i]f an injury results from handling, *preparation for use*, or consumption that is not reasonably expectable, the seller is not liable under this article." *See* Ind. Code § 34-20-4-3 (emphasis added). The Court determines that Parry was prepared to use the Orion flare launcher for self-defense and ultimately did so in contravention of its stated instructions. Parry also prepared the Orion flare launcher for use as a self-protection tool by keeping it loaded in her home as opposed to stored away on a maritime vessel. The Court finds that Standard Fusee could not have reasonably expected a consumer to use the Orion flare launcher in the manner that Parry did.

The packaging on Orion flare launcher contained an instruction that the product was "For marine signaling only," (*see* Filing No. 66-2 at 3–4), which Parry averred that she had read and understood (Filing No. 66-1 at 10). The labels and wording on the Orion flare launcher packaging repeatedly reference "U.S. Coast Guard," "boats," "boating," "boaters," "rescue vessels," and mentions "navigation on coastal waters or the Great Lakes for boats over 16 ft. or smaller boats."

(Filing No. 66-2 at 3–4.) It is not reasonably expected for an ordinary prudent consumer to disregard the clear instructions and purpose of the Orion flare launcher and use it for a wholly different function not at all related to marine signaling.

Parry undoubtedly endured a traumatic and regrettable experience. However, the facts in evidence show that her injury could have been avoided if she had not chosen to disregard the instructions and appropriate use of the Orion flare launcher. Her actions could not be reasonably expected by Standard Fusee. The Court finds no genuine issue of material fact in dispute regarding Parry's failure to adhere to the instructions for appropriate use of the Orion flare launcher. Because the Court has determined that Standard Fusee has successfully raised a defense of misuse under the IPLA, it need not conduct further analysis on Parry's design defect argument. *Hackney v. Pendu Mfg., Inc*., 146 N.E.3d at 1024 ("The misuse defense acts as a complete bar to recovery in a products liability action.").

Therefore, the Court **grants** Standard Fusee summary judgment on Parry's design defect claim based on her misuse of the product.

## IV.    CONCLUSION

For the above reasons, the Court **GRANTS** Standard Fusee's Motion for Summary Judgment (Filing No. 66). Parry's claim is **dismissed with prejudice**. All pending motions are rendered **moot**. The Court will enter Final Judgment by separate order.

**SO ORDERED**.

Date: 12/13/2021

_Tanya Walton Pratt_
Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Matthew S. Bigler
LADENDORF LAW
matt@ladendorf.com

Vincent P. Antaki
REMINGER CO. LPA (Indianapolis)
vantaki@reminger.com

Jeffrey Martin Malsch
RENZULLI LAW FIRM
jmalsch@renzullilaw.com

Anthony J. Odorisi
RENZULLI LAW FIRM, LLP
aodorisi@renzullilaw.com

Christopher Renzulli
RENZULLI LAW FIRM LLP
crenzulli@renzullilaw.com